CITY NATIONAL BANK BUILDING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75104, 76141. Promulgated March 10, 1936.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Gerald W. Brooks, Esq.*, for the respondent.

## OPINION.

Murdock: The principal claim made by the petitioner in these proceedings is that it has never ceased to be the owner in fee simple of the City National Bank Building property and, as such, it is entitled to deduct in each year 3 percent of $750,000, or $22,500, as depreciation on the building. It has already been allowed a deduction for the exhaustion of its leasehold and for the rent which it paid as lessee. The question of discount is not raised, and the Board must assume that the petitioner has been allowed such amortization of discount (for example, discount on its bonds) as it is entitled to deduct in computing its net income for each year. The Revenue Act of 1928 provides for the deduction of "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business." Sec. 23(k). The basis for depreciation is the cost of the property. Secs. 23(m), 114(a), 113(a). This means the cost of the property to the owner who is using the property in

his trade or business. "The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost." *United States* v. *Ludey*, 274 U. S. 295, 300–301. Deductions for depreciation are allowed for the purpose of restoring to the owner his capital investment in exhausting property over the period of its use from untaxed earnings derived from its use.[1] When the owner of depreciating property sells his property, he thereby recovers all or a part of his capital investment in the property, and the difference is made up in gain or loss. He is not entitled thereafter to deductions for depreciation based upon the cost of the property, even though he may immediately lease it. *Weiss* v. *Wiener*, 279 U. S. 333.

The petitioner does not hold the legal title to the building in question, but is only a lessee. The Union Trust Co. holds the legal title, and the holders of the land trust certificates are the beneficial owners of the land and building. *Senior* v. *Braden*, 295 U. S. 422. The holders of the land trust certificates paid about $1,000,000 for their interest. It is a real interest. The petitioner sold the property to the Union Trust Co. of Cleveland, Ohio, by a warranty deed, and received therefor $930,000 in cash and a valuable leasehold. The $930,000 in cash which it received was obviously a return to it of so much of its capital investment in the property and, since it thus recovered that portion of its capital investment, the same amount should not be again recovered by it through deductions for depreciation on the property of others. The remainder of its original cost was recovered through the receipt of a valuable leasehold, and that part of its original capital investment in the property should not be again recovered by it through deductions for depreciation on the property of others. The value of this leasehold is demonstrated by the fact that the petitioner was able immediately to mortgage the leasehold interest for $600,000. The petitioner received $540,000 in cash for the bonds secured by this mortgage. The petitioner is entitled to and has received the benefit of proper deductions for the exhaustion of the leasehold. It may also be entitled to deductions for amortization of discount on its bonds secured by the mortgage on the leasehold. It has claimed and has been allowed deductions for the rent which it pays under the lease. Not only is there no statutory authority for allowing the petitioner a deduction on account of depreciation of the building, but on principle the petitioner is not entitled to such a deduction since, as has been demonstrated, it does not need such deductions to return its capital outlay.

---

[1] See discussion of the depreciation charge by Mr. Justice Brandeis in a dissenting opinion in *United Railways* v. *West*, 280 U. S. 234, 259, *et seq.*

*Weiss* v. *Wiener, supra; Belt Railway Co. of Chicago* v. *Commissioner*, 36 Fed. (2d) 541; certiorari denied, 281 U. S. 742; affirming 9 B. T. A. 304. Cf. *Terminal Realty Corporation*, 32 B. T. A. 623.

The fact that the petitioner is not entitled to depreciation on the building may be further demonstrated. If a new building is ever to replace the present building during the term of the lease, the petitioner will probably have to pay for its erection. That cost will represent additional cost of the leasehold, since the building will not belong to the petitioner. That additional cost, if paid, will be recoverable through annual depreciation charges. *Belt Railway Co.* v. *Commissioner, supra; Brevoort Hotel Co.*, 1 B. T. A. 132; *Brevoort Hotel Co.* v. *Reinecke*, 36 Fed. (2d) 51. The petitioner may not anticipate such future additional costs of its leasehold. *Weiss* v. *Wiener, supra.* A present deduction in anticipation of future additional cost would not be a "reasonable" deduction. If the petitioner decides to forfeit the lease when the present building wears out, its loss will be no more than the unexhausted cost of the leasehold. It can not lose the entire original cost to it of the building, because it sold the building in 1925 and most, if not all, of its original cost was restored to it at that time. If it were allowed annual deductions of $22,500, and then were to default on the lease when the present building wears out, it would have received a substantial amount of income tax free. Congress did not so intend. The question of depreciation allowance to the trustee and the land trust certificate holders is not before the Board.[2] They may, perhaps, sustain no loss from depreciation, due to the provisions of the lease. Cf. *A. Wilhelm Co.*, 6 B. T. A. 1; *Terre Haute Traction & Light Co.*, 24 B. T. A. 197; affirmed on this point, 67 Fed. (2d) 697; *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730. But that question need not confuse the present issue, for the mere fact that the lessors may not be entitled to deductions for depreciation is not a sufficient reason for allowing deductions for depreciation to the lessee. A taxpayer, in order to be entitled to a deduction, must show that it comes within some provision of the statute allowing a deduction. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *Pennsylvania Co. for Insurances* v. *Commissioner*, 75 Fed. (2d) 719; *Barbour Coal Co.* v. *Commissioner*, 74 Fed. (2d) 163. This the present petitioner has failed to do.

The petitioner argues that the sale of the property to the Union Trust Co., the declaration of trust, and the sale of the land trust certificates, must be treated as a mortgage and not as a sale by the

---

[2] Section 23 (k) provides that "in the case of property held in trust the allowable deduction [for depreciation] shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provision, on the basis of the trust income allocable to each."

petitioner. The decision of the Board in *F. and R. Lazarus & Co.*, 32 B. T. A. 633, now on appeal to the Court of Appeals for the Sixth Circuit, and the decision of the Sixth Circuit in *Commissioner* v. *Neighbors Realty Co.*, 81 Fed. (2d) 173, affirming an unpublished opinion of the Board, are cited as authorities in support of this argument. The opinions of the Board in the above mentioned cases were promulgated prior to the decision of the Supreme Court in *Senior* v. *Braden, supra.* The appellate court in the *Neighbors* case considered *Senior* v. *Braden*, but was of the opinion that that decision did not reach the issue in the *Neighbors* case. It allowed the taxpayer a deduction for depreciation on the building on the ground that it still owned the building. The court stated:

> Neither are we required for purpose of decision to hold with the Board that the deed, declaration of trust and lease together constituted a mortgage. * * * We see nothing in the *Senior* v. *Braden* holding inconsistent with the existence of a relationship of borrower and lender between the taxpayer and the certificate holders or their trustee, or that compels a holding that the taxpayer's financing plan resulted in a sale rather than a loan, even when applying the doctrine there announced in the full import claimed for it by the Commissioner to the estate held by the trustee or the certificate holders in the present case.

The facts in the present case are different in some respects from the facts in the *Lazarus* and *Neighbors* cases. It may be that these differences serve to distinguish the cases. The transactions in the *Lazarus* and *Neighbors* cases were initiated by existing corporations in order to refinance their indebtedness. Here the transactions were initiated by bankers who desired some business. The petitioner was given the right to mortgage its leasehold estate. No such right was given under the *Lazarus* and *Neighbors* leases. The petitioner actually mortgaged its leasehold estate, bonds secured by the mortgage were sold to the public, and the petitioner received $540,000 of the proceeds. In the present case and in the *Lazarus* case the land trust certificates were not delivered to the taxpayer but were sold by either the trustee or the bankers, while in the *Neighbors* case the trustee delivered the land trust certificates to the former owner, which then sold them to bankers. The lease in the *Neighbors* case contained provisions relating to separate property owned by the lessee. No such provisions are found in the *Lazarus* leases or in the lease involved in the present case. The question of gain or loss which was involved in the *Lazarus* and *Neighbors* cases is not involved in the present case.

The Supreme Court in *Senior* v. *Braden, supra*, considered the same land trust certificates issued on the City National Bank Building of Omaha which are involved in this present proceeding. Although the court had a very different question before it, nevertheless,

we think that its decision points the way for our decision of the present question. The Court there concluded that the trustee held legal title to the real estate, and the owners of the trust certificates had an interest in the land. The Court, including the dissenting members, was obviously of the opinion that the sale was a real sale and not merely a loan or a mortgage. Had the Court been of the opinion that the owners of the trust certificates were merely owners of an equitable interest in a mortgage or in something which amounted to no more than security for a loan, it would have either reached a different conclusion or have based its decision upon some other ground than that upon which it did base it. Thus the transactions in the present case were in law and in fact exactly what they purported to be. The petitioner sold its property, benefited from the method which it used, and now can not deny the fact of sale in order to claim tax benefits which would have resulted from the use of a mortgage or some other form of loan. The test is what was done, not what might have been done. *United States* v. *Phellis*, 257 U. S. 156. The above discussion also disposes of the petitioner's alternative contention.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

BLACK, dissenting: I do not think that the facts in the instant case are sufficiently different to justify a distinction in this case from what we held in *F. and R. Lazarus & Co.*, 32 B. T. A. 633, now on appeal to the Sixth Circuit, and in a memorandum opinion in *H. F. Neighbors Realty Co.*, affirmed by the Court of Appeals for the Sixth Circuit, 81 Fed. (2d) 173.

I think that the court in the *Neighbors* case rightly held that the Supreme Court's decision in *Senior* v. *Braden*, 295 U. S. 422, does not control the decision of the question which we have here to decide. As to the effect of the Supreme Court's decision in *Senior* v. *Braden*, the court said in part:

We see nothing in the *Senior* v. *Braden* holding inconsistent with the existence of a relationship of borrower and lender between the taxpayer and the certificate holders or their trustee, or that compels a holding that the taxpayer's financing plan resulted in a sale rather than a loan, even when applying the doctrine there announced in the full import claimed for it by the Commissioner to the estate held by the trustee or the certificate holders in the present case.

A collateral issue is involved with respect to depreciation taken by the taxpayer upon the buildings located upon the leased property, on the theory that the taxpayer still had the beneficial interest in the property, and on the theory that the investment in the buildings was of its capital as owner. The Board allowed the depreciation. We think it was right, and that the case of *Weiss* v. *Wiener*, 279 U. S. 333, does not here apply. See also *Cogar* v. *Commissioner of Internal Revenue*, 44 Fed. (2d) 564 (C. C. A. 6).

The decision of the Board of Tax Appeals is affirmed.

. Of course it seems clear that petitioner would not be entitled to a deduction for both amortization of its so-called leasehold and a deduction for depreciation. If petitioner is entitled to a deduction for depreciation, and I think it is, then its so-called leasehold should simply be regarded as a part of its plan for securing the certificate owners in the loans which were made to petitioner and petitioner should not be allowed any deduction for exhaustion of leasehold.

A deduction for depreciation would take care of its return of capital invested in wasting assets. Therefore I think an opinion in this proceeding should hold that petitioner is entitled to the deduction for depreciation which it claims and should be disallowed the deduction for amortization of leasehold which it claimed on its income tax return and was allowed by the Commissioner.

ARUNDELL, McMAHON, and LEECH agree with this dissent.