Zalk-Josephs Company v. Commissioner.
Zalk-Josephs Co. v. Commissioner
Docket No. 28247.
United States Tax Court
1951 Tax Ct. Memo LEXIS 160; 10 T.C.M. (CCH) 662; T.C.M. (RIA) 51215; July 13, 1951
*160 Edward C. Adams, Esq., for the respondent. JOHNSON Memorandum Opinion JOHNSON, Judge: The Commissioner has determined a deficiency in income tax of $3,444.31 for the fiscal year ended September 30, 1946. The only issue is whether the excess of fair market value over basis of the assets distributed by petitioner to its preferred stockholders in partial payment of the preferred stock dividend declared January 4, 1946, constitutes income taxable to petitioner in the fiscal year ended September 30, 1946. The case was submitted on documentary evidence and a stipulation of facts. Such facts as are material to the issue are incorporated herein. [The Facts] Petitioner is a Minnesota corporation with its office and principal place of business at Duluth, Minnesota. It was incorporated in 1923 under the name of Duluth Iron & Metal Company. It has always kept its books of account on the accrual basis and since 1939 has filed its Federal tax returns on that basis for fiscal years ended September 30th. Its fiscal 1946 returns were filed with the collector of internal revenue at St. Paul, Minnesota. Pursuant to a resolution of the stockholders of the Duluth Iron & Metal *161 Company dated May 19, 1949, the name of the company was changed, by amendment to its articles of incorporation, to Zalk-Josephs Company. On January 4, 1946, the petitioner's outstanding capital stock consisted of: 2,750
shares Common, voting, no par
3,416
shares 5% First Preferred, cumulative
5,807.2
shares 4 3/4% Second Preferred, cumulative
The above-described preferred stocks were of a par value of $100 per share and cumulative as to dividends commencing January 1, 1945. The first dividend payments on the above preferred stocks were authorized by the directors January 4, 1946. The minutes of the meeting read as follows: "We, the undersigned, constituting the entire Board of Directors of Duluth Iron and Metal Company, a Minnesota Corporation, do hereby unanimously adopt the following resolution, to-wit: "'Resolved that this corporation distribute: 105 shares of Allied Chemical Company stock 56 shares of du Pont de Nemours capital stock 400 shares of First Bank Corporation capital stock 152 shares of the capital stock of Standard Oil of Indiana, and $274.70 in cash to its Preferred Stockholders pro rata according to their rights to new First *162 and Second Preferred Stocks when issued under the Articles of Incorporation of this company as amended pursuant to resolution of stockholders duly adopted on the 17th day of November, 1945, and pursuant to and in accordance with a resolution of the stockholders duly adopted on that date for the exchange of new Preferred for old Preferred Stocks, such stocks to be valued for the purpose of such pro rata distribution at the closing sale price on January 3, 1946, and such stocks and cash to be distributed in such manner as to the different kinds of stock and amounts of cash to each of such Preferred Stockholders, as may be acceptable, to them, and as a dividend of $5.00 per share on such new First Preferred stock and $4.75 per share on such new Second Preferred stock, both for the year 1945.' "Be it further resolved that the executive officers of this corporation be and they hereby are authorized and directed to proceed with such distribution forth-with. "Dated this 4th day of January, 1946. (Signed) "Louis Zalk H. Y. Josephs Frank S. Laskowski Arthur C. Josephs Louis Z Zalk Allan F. Zalk" In making its Federal income tax return for the taxable year ended September 30, 1946, petitioner *163 reported no income from the distributions to its stockholders made pursuant to the resolution of the directors dated January 4, 1946. In the notice of deficiency respondent determined that petitioner derived a long-term capital gain of $13,777.19 in the taxable year from the above-described distribution. [Opinion] Petitioner contends that the above distribution of securities to its preferred stockholders is a distribution in kind not resulting in a realization of income, relying on ; aff'd, on this point (C.A. 4), ; aff'd (1935), . Respondent, on the other hand, contends that the above resolution was a declaration of a dividend in a definite amount and a subsequent discharge of a pecuniary obligation by a distribution of assets thereby realizing taxable gain. In support of this contention respondent advances two principal arguments: First, that the resolution did not obligate petitioner to distribute any specific securities and thus petitioner could have purchased securities on the market to satisfy the requirements of the resolution, retaining the securities *164 then held, with the increment in value inuring to the common stockholders. This argument, we believe, is too specious to consider in view of the fact that tax consequences result from what did in fact transpire, not what could have. Respondent also argues that the resolution created a corporate liability in a definite amount and then provided for the payment thereof by means of the stock distribution, - the definite amount being the preferred cumulative dividend for 1945. The crux of this argument is that the distribution of securities and cash in an amount equal to the preferred cumulative dividend was a satisfaction of a corporate debt and hence a realization of income. With this we can not agree. It is well settled that a stockholder is not a creditor of a corporation and this is true of a holder of preferred stock as well as of a holder of common stock. Hazel Atlas Glass Co. v. Van Dyk & Reeves, Inc. (C.A. 2, 1925), . It is equally well settled that a stockholder has no right to the payment of dividends until they have been declared by the board of directors. It is not until then that a corporate obligation arises and a debt is created. In the *165 instant case, although the preferred dividend for 1945 was due, there existed no debt and consequently the stockholders possessed no right which could constitute the basis of an action demanding payment of a dividend. The distribution of assets of the corporation satisfied no existing debt and therefore resulted in no realization of income. It was a distribution to the stockholders; "in effect they received in altered form what they had theretofore owned collectively". . Having concluded that no legally enforceable obligation existed prior to the declaration, we turn now to a consideration of the effect of the resolution itself. Did it declare a dividend of an amount of money, or did it declare a distribution of assets? The resolution stated in part: "Resolved that this corporation distribute: * * * [naming the stock and the numer of shares of each, plus an amount of cash] to its Preferred Stockholders pro rata according to their rights to new First and Second Preferred Stocks * * * such stocks to be valued * * * at the closing sale price on January 3, 1946, and such stocks *166 and cash to be distributed * * * as a dividend of $5.00 per share on such new First Preferred stock and $4.75 per share on such new Second Preferred stock, both for the year 1945." This resolution, at the outset, called for a distribution of stock not an amount of money. The statement in the resolution that the securities were distributed as a dividend on First and Second Preferred stock in amounts of $5.00 and $4.75 per share, respectively, is more in the nature of defining the proportionate amounts distributable to each share of petitioner's stock than it is a declaration of the payment of a definite amount of money in satisfaction of a debt. This more clearly appears to be the case when consideration is given to the manner in which a group of stocks of various values is to be distributed pro rata according to stockholdings. It becomes essential that a divisional factor be used to determine the proportional distribution. There was not a declaration to pay an amount of money. Having obligated itself to distribute a specified number of particular securities, petitioner could not discharge this obligation in some other manner. *167 We do not believe , and , relied on by respondent are here applicable. In the Callanan case the declaration specified a definite amount of money to be paid in dividends and that bonds in this amount were to be sold. The dividend obligation was later satisfied by a distribution of the bonds. This was not a resolution calling for the distribution of a number of bonds, but the satisfaction of a definite money obligation. In the Bacon-McMillan case the resolution called for a 50 per cent dividend and then provided for the satisfaction of this obligation through the distribution of bonds. It was an obligation in a definite specified amount as distinguished from a distribution of securities. We conclude therefore that the resolution in the instant proceeding was a declaration of a distribution in kind under the rationale of , whereby petitioner realized no taxable gain. It was not a sale nor a payment in satisfaction of a debt. Decision will be entered for the petitioner.